UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE ALPHAS COMPANY, INC., | ) |
| Petitioner-Appellant, | ) |
| v. | ) Civil Action No. 10-10831-PBS |
| DAN TUDOR & SONS SALES, INC., | ) |
| Complainant-Appellee. | ) |

**REPORT AND RECOMMENDATION ON DAN TUDOR
& SONS SALES, INC.'S REQUEST FOR ATTORNEYS' FEES**

June 8, 2011

Boal, M.J.

On May 14, 2010, the Alphas Company, Inc. ("Alphas") filed a Petition and Notice to Appeal an Administrative Decision and Order (Docket No. 1) (the "Petition"), seeking appellate review of a Reparation Order issued against it and in favor of Dan Tudor & Sons Sales, Inc. ("Tudor") by the Secretary of Agriculture, U.S. Department of Agriculture, PACA Division ("USDA"), pursuant to 7 U.S.C. § 499g. On January 31, 2011, the District Court adopted this Court's report and recommendation that the Petition be dismissed with prejudice and remanded the matter to this Court for a report and recommendation on Tudor's request for attorneys' fees. For the following reasons, this Court recommends to the District Judge to whom this case is assigned that Tudor's request for attorneys' fees be ALLOWED and that the District Court award Tudor reasonable attorneys' fees in the amount of $4,808.50.

FACTUAL AND PROCEDURAL BACKGROUND

Tudor is a seller of perishable agricultural commodities. (PACA Complaint at 1).[1] Tudor filed a reparation complaint against Alphas pursuant to the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a, et seq. ("PACA"). (Id.). In its Complaint, Tudor alleges that between September 21, 2005 and November 5, 2005, it sold seventeen shipments of table grapes to Alphas. (Id. 1-2). Tudor alleges that Alphas failed to pay for the table grapes. (Id. at 2).

On November 4, 2009, a Reparation Order was issued against Alphas and in favor of Tudor by the USDA (the "Reparation Order") (PACA Decision and Order dated November 4, 2009). The Reparation Order awarded Tudor the amount of $70,328.06 plus interest and the filing fee of $300.00. (Id. at 58-59). Alphas filed a motion for reconsideration with the USDA. (PACA Respondent's Petition for Reconsideration dated December 15, 2010). On or about April 14, 2010, an Order on Reconsideration was issued revising the original Reparation Order, and granting an award in favor of Tudor and against Alphas in the amount of $61,065.46, plus interest from December 1, 2009, plus the $300.00 filing fee and $6,940.97 for fees and expenses. (PACA Order Modifying Decision and Order in Response to Respondent's Petition for Reconsideration). The USDA modified its original Reparation Order because of errors in the calculation of damages as to certain transactions at issue. (Id. at 1).

On May 14, 2010, Alphas commenced the instant action seeking review of the USDA's Reparation Order pursuant to 7 U.S.C. § 499g. Tudor moved to dismiss the Petition for lack of subject matter jurisdiction. (Docket No. 5). Tudor argued that this Court lacks jurisdiction to

---

[1] See Dan Tudor and Son Sales, Inc. v. The Alphas Company, Inc., United States of America, Department of Agriculture, PACA Docket No. R-07-092.

hear this appeal because Alphas failed to timely file a sufficient bond as mandated by statute. Alphas conceded that it had failed to file the required bond but stated that its failure was due to Tudor's repudiation of a purported settlement agreement on the date of the expiration of the deadline for filing the bond. (Docket No. 9).

On January 11, 2011, this Court issued a report and recommendation on Tudor's motion to dismiss, and recommended that the District Court dismiss the case with prejudice for lack of subject matter jurisdiction. (Docket No. 15). On January 31, 2011, the District Court adopted this Court's recommendation and dismissed the case with prejudice. The District Court also remanded the matter to this Court for a report and recommendation on Tudor's request for its attorneys' fees, including consideration of whether Tudor's alleged repudiation of the settlement agreement undermines Tudor's claim for attorneys' fees.

## DISCUSSION

Alphas argues that Tudor is not the prevailing party for purposes of the fee-shifting provisions of PACA because this Court dismissed Alphas' Petition for jurisdictional reasons and did not reach the merits of Alphas' appeal. (Alphas Br. at 1-4).[2] Alphas also argues that Tudor should not recover its attorneys' fees because Alphas' failure to file the required bond was due to Tudor's actions: Tudor's alleged repudiation of the parties' settlement agreement at the last minute prevented Alphas from filing the bond on time. (Alphas Br. at 4-5). This Court disagrees. For the reasons set forth below, this Court recommends that the District Court award reasonable fees to Tudor in the amount of $4,808.50.

---

[2] "Alphas Br. __" refers to the Memorandum in Opposition of the Alphas Company, Inc. To Dan Tudor & Son Sales, Inc.'s Claim for Attorney Fees (Docket No. 22).

I.      Tudor Is The Prevailing Party

Under PACA, when a reparation order is appealed to a district court, the "appellee shall not be liable for costs in said court and if appellee prevails he shall be allowed a reasonable attorney's fee to be taxed and collected as part of his costs." 7 U.S.C. § 499g(c). If the appellee prevails, an award of attorneys' fees is mandatory by the district court. Robinson Farms Co. v. D'Acquisto, 962 F.2d 680, 686 (7th Cir. 1992); Koam Produce, Inc. v. DiMare Homestead, Inc., 222 F. Supp. 2d 399, 401 (S.D.N.Y. 2002); Frankie Boy Produce Corp. v. Sun Pacific Enter., No. 99 Civ. 10158, 2000 WL 1532914, at *1 (S.D.N.Y. Oct. 17, 2000).

Congress provided for attorneys' fees in PACA appeals because it "recognized that in almost every case the amount of the Secretary's award would be less than the cost of appeal to, and trial de novo in, a federal district court." Koam Produce, 222 F. Supp. 2d at 401. "The provision is meant to provide means for both shippers and buyers to defend their rights under the statute, regardless of how small the amount in controversy." Id. "If the costs of defending its favorable decision by the Secretary were not reimbursed to a prevailing appellee, then the losing party could destroy the value of the Secretary's award, by merely noticing an appeal." Id. Therefore, if appellee Tudor is the prevailing party, it is entitled to reasonable attorneys' fees.

Alphas argues that Tudor is not the prevailing party because Tudor's motion to dismiss "was allowed for strictly jurisdictional reasons." (Alphas' Br. at 1). The District Court dismissed Alphas' Petition because the Court lacked jurisdiction over the appeal due to Alphas' failure to file the jurisdictionally required bond. According to Alphas, because the Court's decision did not reach the merits of the appeal, Tudor cannot be considered a prevailing party. (Alphas' Br. at 2). This Court disagrees.

"Fee-shifting statutes represent a departure from the historic American Rule, which dictates that parties to a case normally will bear their own counsel fees and costs." Hutchinson v. Patrick, 636 F.3d 1, 8 (1st Cir. 2011) (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975)). "When used in a federal fee-shifting statute, the term prevailing party is a legal term of art." Id. (quoting Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 603 (2001)) (internal quotations omitted). "The concepts that shape the term apply broadly to the entire universe of federal fee-shifting statutes." Id. (citations omitted).

To qualify as a prevailing party, a party "must show that a material alteration of the parties' legal relationship has taken place as a result of the litigation." Id. (citing Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-93 (1989)). In addition, a party must show that the alteration possesses a "judicial *imprimatur*." Id. at 8-9 (citing Buckhannon, 532 U.S. at 605) (emphasis in original).

The Court's dismissal of the Petition with prejudice satisfies both conditions. It qualifies as a judicially recognized material alteration of the parties' legal relationship because after the Court's decision, the Reparation Award in favor of Tudor stands. See Hutchinson, 636 F.3d at 8-9. In addition, following the Court's order dismissing the case with prejudice, Tudor will be able to rely on a *res judicata* defense if Alphas attempted to appeal the Reparation Order again. See, e.g., United States v. Certain Real Property, 543 F. Supp. 2d 1291, 1294 (N.D. Ala. 2008) (party obtaining dismissal with prejudice is prevailing party because it will be able to rely on *res judicata* defense if the other party files another action). Accordingly, Tudor is the prevailing party under Section 499g(c) and it is entitled to an award of reasonable attorneys' fees.

In its opposition, Alphas argues that the language of the statute requires a trial de novo to occur before a party may prevail for purposes of recovering its attorneys' fees. (Alphas Br. at 2). Section 499g(c) provides, inter alia, that an appeal of a PACA reparation order "in the district court shall be a trial de novo and shall proceed in all respects like other civil suits for damages except that the findings of fact and order or orders of the Secretary shall be prima-facie evidence of the facts therein stated." According to Alphas, the word "shall" means that a trial de novo must occur before fees and costs can be awarded to the non-appealing party. This Court finds this argument unpersuasive.

The requirement for a trial de novo merely establishes the standard of review for USDA reparation orders. See, e.g., Sun Pacific Mktg. Coop., Inc. v. DiMare Fresh, Inc., No. CIV-F-06-1404, 2010 WL 3220301, at *9 (E.D. Cal. Aug. 13, 2010) (citations omitted) (discussing Section 499g(c) standard of review). That requirement does not alter the standard for determining whether a party has prevailed under cases under the Supreme Court's decision in Buckhannon and the First Circuit's decision in Hutchinson. Again, because the Court dismissed Alphas' Petition with prejudice, the legal relationship of the parties has been materially altered.[3] Accordingly, this Court finds that Tudor is the prevailing party under Section 499g(c) and it is

---

[3] The cases cited by Alphas for the proposition that a case must be decided "on the merits" before a party is considered to have prevailed are inapposite. Hanrahan v. Hampton, 446 U.S. 754 (1980) involved the Court of Appeals' reversal of the District Court's entry of directed verdicts against the plaintiffs. The Supreme Court held that the plaintiffs were not prevailing parties because the Court of Appeals' decision only entitled the plaintiffs to return to the district court for a trial of their case. Id. at 758-59. United States v. 2007 BMW 3351 Convertible, 648 F. Supp. 2d 944 (N.D. Ohio 2009) is a forfeiture case that the government dismissed *without* prejudice. In both cases, the parties opposing the award of attorneys' fees continued to be entitled to a determination of their cases on the merits. Unlike those cases, Alphas is precluded from bringing its Petition before the Court again.

entitled to recover its reasonable attorneys' fees.

II. Alphas' Claim That It Did Not File The Required Bond In Time Because Tudor Reneged On A Purported Settlement Agreement At The Last Minute Does Not Undermine Alphas' Claim For Attorneys' Fees

Alphas argues that Tudor's actions prevented it from filing the required bond on time. However, that claim is belied by the record in this case. The telephone message upon which Alphas bases its claim does not prove that a settlement agreement was reached. In the message, Erwin Bartel, Tudor's Controller, stated that Tudor recognized that it may never be able to collect its judgment against Alphas and that it was not going to take it any further. Mr. Bartel never said that Tudor had reached an agreement with Alphas regarding the Reparation Order or that it had agreed to dismiss the Reparation Order. See Alphas Aff. at ¶ 8;[4] see also Declaration of Erwin Bartel, Docket No. 18-3, at ¶¶ 3-5.

Even assuming that Alphas and Tudor had indeed entered into a settlement agreement and Tudor reneged on the agreement at the last minute, this does not explain Alphas' failure to file the required bond in the ten months since Alphas filed its Petition.[5] Accordingly, this Court

---

[4] "Alphas Aff. __" refers to the Affidavit of John S. Alphas (Docket No. 22-1). According to Alphas, the exact message was as follows:

> Yanni, this is Erwin at Dan Tudor & Sons. Talked with Tony and we agreed that we probably never will collect this anyhow, so we're not, we're not going to pursue it any further. We're just going, you know, if you never pay, you never pay and that's OK with us. So, you can take it from there. Thank you!

Alphas Aff. at ¶ 8.

[5] Alphas' Petition may have been dismissed even if Alphas' filed the bond shortly after the deadline. See Kessenich v. Commodity Futures Trading Comm'n, 684 F.2d 88, 92 (D.C. Cir. 1982) (because bond requirement is jurisdictional, the time for filing a bond is unalterable). However, had Alphas' filed the required bond shortly after the deadline, the Court may have taken that factor into consideration in determining whether Tudor is entitled to attorneys' fees.

finds that Alphas' allegations do not undermine Tudor's request for attorneys' fees.

III.     Calculation Of Reasonable Attorneys' Fees Award

Tudor seeks reimbursement of $7,443.50 in legal fees. While Alphas challenges whether Tudor is entitled to attorneys' fees, it does not challenge the reasonableness of the fees sought. However, this Court must determine for itself whether Tudor's request is reasonable. Although Tudor is the prevailing party in this case, it is not necessarily entitled to recover for all the time spent in this litigation. See Culebras Enter. Corp. v. Rivera-Rios, 846 F.2d 94, 102 (1st Cir. 1988). Instead, the Court must calculate a reasonable fee award. The First Circuit has recently summarized the principles applicable to the determination of a reasonable attorneys' fee award:

> When fashioning a fee award, the district court ordinarily starts by constructing what has come to be known as the lodestar. In general, the lodestar is the product of the number of hours appropriately worked times a reasonable hourly rate or rates. The party seeking the award has the burden of producing materials that support the request. These materials should include counsel's contemporaneous time and billing records, suitably detailed, and information anent the law firm's standard billing rates. The putative payor may submit countervailing evidence. The court, usually after hearing arguments, will then calculate the time counsel spent on the case, subtract duplicative, unproductive, or excessive hours, and apply prevailing rates in the community (taking into account the qualifications, experience, and specialized competence of the attorneys involved).

Hutchinson, 636 F.3d at 13 (internal citations and quotations omitted).

   1.     Reasonable Hourly Rate

The first step in calculating the lodestar amount involves determining the reasonable hourly rate. The reasonable hourly rate is the rate " prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Grendel's Den,

---

Alphas' argument that its failure to file the bond on time was due to Tudor's conduct would have more credibility if Alphas' had filed the bond as soon as possible after the deadline.

Inc. v. Larkin, 749 F.2d 945, 955 (1st Cir. 1984) (quotations omitted). "The fee-seeker must carry the burden of establishing the prevailing hourly rate (or schedule of rates) in the community for the performance of similar legal services by comparably credentialed counsel." Hutchinson, 636 F.3d at 16 (citations omitted).

Tudor retained the law firm of Rynn & Janowsky, LLP ("Rynn") in Newport Beach, California. (Botta Aff. at ¶ 4).[6] A substantial amount of the firm's litigation practice directly involves cases arising under PACA. (Id.). Bart M. Botta is the primary attorney at Rynn that worked on this case. Angel Iglesias, a paralegal, also worked in this case. (Id. at ¶ 7). Attorney Botta has a billable rate of $350.00 per hour. (Id.). Mr. Iglesias has a billable rate of $65.00 per hour. (Id.).

Attorney Botta has approximately 17 years of experience litigating PACA claims and he states that he is very familiar with this area of the law. (Id. at 4). Approximately 75% of Attorney Botta's caseload consists of PACA related matters. (Id.).

Valerie Carter from Carter & Doyle, LLP, a Massachusetts firm, acted as local counsel in this case. (Id.). Attorney Carter has a billable rate of $350.00 per hour. (Id.).

The materials submitted by Tudor do not include the experience and qualifications of Mr. Iglesias or Attorney Carter. Although Attorney Botta states that his firm's rates and Carter & Doyle's rates are competitive and reasonable among the law firms that have an expertise in PACA matters, no evidence has been presented to support that claim.

The Court is not aware of any cases in this district regarding the prevailing rates for

---

[6] "Botta Aff. __" refers to the Declaration of Bart M. Botta in Support of Dan Tudor & Son Sales, Inc.'s Memorandum of Law in Support of its Claim for Attorney Fees as the Prevailing Party (Docket No. 18-1).

attorneys handling PACA matters nor have the parties provided any citations to such cases.[7] In 2008, the Northern District of New York found that the prevailing rates for PACA attorneys were $210.00 per hour for the most experienced attorneys, $120.00 per hour for attorneys with less than four years of experience, and $80.00 per hour for paralegals. See A. Duda & Sons, Inc. v. Oswego Growers & Shippers, Inc., No. 5:07-CV-376, 2008 WL 4426607, at *1 (N.D.N.Y. Sept. 24, 2008). Similarly, in 2006, the Western District of New York found a rate of $250 per hour to be reasonable for attorneys with substantial experience handling PACA matters. See Brigiotta's Farmland Produce and Garden Center, Inc., v. Przykuta, Inc., No. 05-CV-273S, 2006 WL 3240729, at * 7 (W.D.N.Y. Jul. 17, 2006). Counsel has adduced no evidence warranting a different rate. Accordingly, this Court finds an hourly rate of $250.00 per hour to be reasonable for Attorneys Botta and Carter, and an hourly rate of $65.00 per hour to be reasonable for Mr. Iglesias.

  2.  Hours Reasonably Expended

Generally, the "trial bench need not feel handcuffed by counsel's submission of time records, no matter how elaborate." Guckenberger, 8 F. Supp. 2d at 100 (citations omitted). "To the contrary, the presiding judge must draw on her experience and wisdom in deciding whether the time spent on each phase was in excess of a reasonable amount." Id. (alterations and citations omitted).

"Typically, a court proceeds to compute the lodestar amount by ascertaining the time counsel actually spent on the case and then subtracting from that figure hours which were

---

[7] The rates of the local community should be applied even when the lawyers seeking fees are from another area. See Guckenberger v. Boston Univ., 8 F. Supp. 2d 91, 103 (D. Mass. 1998) (Saris, J.).

duplicative, unproductive, excessive, or otherwise unnecessary." Id. (internal quotations omitted). The First Circuit does not require courts to set forth an hour-by hour analysis of a fee request. Id. (quotations omitted). "Nevertheless, when a district court makes a substantial reduction in fees requested, the Court should offer reasonably explicit findings and has a burden to spell out the whys and wherefores." Id. (internal quotations and citations omitted).

Here, Tudor's attorneys spent a total of 20.4 hours on this case. Attorney Botta is responsible for the majority of the work, having spent 14.3 hours in this case.[8] Attorney Carter spent 5.2 hours in this case. Finally, Mr. Iglesias spent 0.9 hours in this case. The majority of these hours were spent reviewing pleadings, doing research, drafting the motion to dismiss papers and the materials regarding Tudor's request for attorneys' fees. Having reviewed the bills in this case in detail, this Court finds that, except for a small amount of time devoted to legal research that appears to be unrelated to the issues in this case,[9] the time actually spent by Tudor's counsel in this case is reasonable.

Accordingly, this Court calculates the lodestar amount as follows:

Bart M. Botta: 14.3 hours at $250.00 per hour =    $3,575.00

Valerie Carter: 4.7 hours at $250.00 per hour  =    $1,175.00

Angel Iglesias: .9 hours at $65.00 per hour =    $58.50

Total                                                                 $4,808.50

---

[8] This figure does not include a small amount of work for which Tudor was not charged.

[9] On June 7, 2010, Attorney Carter billed 0.5 hours to "Legal research re: homestead protection." (Docket No. 26-1). It is not clear how such research has any bearing on the issues presented to this Court. Accordingly, this Court declines to recommend that Tudor recoup legal fees related to this entry.

This Court recommends that the District Court award attorneys' fees to Tudor in the amount of $4,808.50.

## RECOMMENDATION

For the reasons stated herein, this Court recommends to the District Judge to whom this case is assigned that Tudor's request for attorneys' fees be ALLOWED and that the District Judge award Tudor reasonable attorneys' fees in the amount of $4,808.50.

## REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge